13 So.2d 853

**HOUSING AUTHORITY OF NEW OR-
LEANS v. PERSSON et al.**

No. 35845.

May 17, 1943.

William J. Guste, of New Orleans, for plaintiff-appellant.

James J. Landry, Alvin G. Montgomery, and George Montgomery, all of New Orleans, for defendant-appellee Leon S. Corbeau, Jr.

PONDER, Justice.

The Housing Authority of New Orleans brought condemnation proceedings against John A. H. Persson, Leon S. Corbeau, Jr. and two others, seeking to expropriate their property. The value of the property was determined by a jury of freeholders. The lower court gave judgment for an amount equal to that fixed by the jury of freeholders. The plaintiff has appealed from the judgment of the lower court only in so far as the award allowed the defendant, Leon S. Corbeau, Jr., for his property.

In the judgment of the lower court, the defendant, Leon S. Corbeau, Jr., was allowed $25,000 for five lots of ground and the improvements thereon. $21,300 of this amount was allowed for the property located at 1940 Orleans Ave., forming the corner of Orleans Ave. and Prieur St., upon which the defendant operated a filling station. The lot is irregular, measuring 57'4" fronting Orleans Ave. with a width in the rear of 46'4" and approximately 56'6" in depth. There is a building on this lot which the defendant used as a filling station. $3,700 was allowed for the other four lots and improvements thereon located on St. Peter St. and Orleans Ave. The improvements are a four room single house; a double cottage with three rooms on either side; another double cottage with three rooms on either side, and a two story building containing seven rooms. The defendant was receiving $1,056 per year rent from the last-mentioned properties. He was receiving no rent from the filling station for the reason that he was operating the station himself.

The plaintiff contends that the award made to the defendant for the property is excessive. It claims that the award was erroneously based on the value of the business conducted on the property rather than the value of the property itself.

The record shows that three experts were called by the plaintiff to estimate the value of the property. Two of these experts testified that the property, in their opinion, was worth $8,908; that the defendant was entitled in addition thereto to $700 for removing the tanks and equipment to another site, and $1,000 for temporary loss of business that the defendant would suffer until he could become reestablished at another site; and that the total sum amounted to $10,608. The other expert called by the plaintiff testified that he would set an appraisal value on the property of $7,700.

The defendant testified that the entire property was worth $50,000 to him. He stated that he made a profit of around $3,700 from the filling station, and that his total sales of gasoline amounted to approximately $50,000 per year. He stated that his location was ideal for incoming traffic, and that it would be hard to duplicate.

Mr. Alex Scivicque testified that he was in the real estate business in connection with Mr. Joubert's office; that the oil station was worth $25,000; that he would value the entire property at $34,150; that figuring the amount of business that the defendant transacted in the filling station, the number of gallons of gasoline sold by the defendant, the station could be rented for $150 per month or $1,800 per year; and that after deducting the taxes and insurance, there would be left better than 6% net profit on an estimated investment of $25,000.

Mr. Norman F. DeReyna testified that he was of the opinion that the entire property was worth $39,807, and that the filling station property was worth $27,800. He arrived at the value of the filling station by the capitalization of the income as follows: the property could be rented for $1,800 per year, and after deducting the insurance and taxes, it would bring better

than 6% interest on an investment of $27,800.

Mr. Wm. R. Ziegler, city sales manager for the Pan-American Petroleum Corporation, testified that to his own knowledge the defendant had been selling 15,000 or more gallons of gasoline per month over a period of years; that from an oil standpoint, he would fix the rental value of the station on the basis of 1¢ per gallon of gasoline sold; that he would offer the defendant a deal on this basis; and that under this computation, the defendant would receive rent at the rate of $150 or more per month for the filling station business. He further testified that the defendant had a very desirable oil station.

The record also shows that the jury of freeholders inspected the property before they made their award.

From our appreciation of the evidence in the case, the location of the filling station was a desirable one. Orleans Ave. is a wide paved street, and the filling station is so located that it is available to incoming traffic. It cannot be disputed that the location of property must be taken into consideration in estimating its value. It is well settled that the measure of compensation to be awarded the owner of property in expropriation proceedings is the market value of the property so taken. The market value is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy. While the rental value of the property or the income the owner is able to derive from it is not the measure of compensation, it is material, however, in so far as it throws light upon the market value.

While the value of the business conducted on the property has been taken into consideration by some of the witnesses in arriving at the rental value or income derived from the business with the view of throwing light on the market value of the property, yet, we do not find that any of the witnesses estimated the value of the property on the basis of the business conducted upon it. In fact, the defendant has never contended that he was entitled to the value of the business itself.

There is a wide discrepancy in the values fixed by the various experts who testified in this case. The jury of freeholders, after their inspection of the property, gave an award for an amount more than the value fixed by the plaintiff's witnesses and less than that fixed by the defendant's witnesses.

Under the circumstances in this case, we are not prepared to say that there is palpable error in the award or that it is manifestly excessive. The jurors were freeholders and residents of the vicinity in which the property sought to be taken is situated, and they are presumed to have some personal knowledge of the property values. They are clothed to some extent with the character and authority of experts, and their verdicts are entitled to respect unless manifestly erroneous. Housing Authority of New Orleans v. Polmer, 195 La. 608, 197 So. 247, and authorities cited therein.

For the reasons assigned, the judgment of the lower court is affirmed at appellant's cost.