135 So.2d 378 (1961)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Dr. Joseph P. FRELLSEN, Defendant-Appellee.
No. 9612.
Court of Appeal of Louisiana, Second Circuit.
November 22, 1961.
D. Ross Banister, W. Crosby Pegues, Jr., Glenn S. Darsey, Braxton B. Croom, Brunswig Sholars, Ben C. Norgress, Baton Rouge, for plaintiff-appellant.
Anders & Anders, John Barkley Knight, Jr., Winnsboro, for defendant-appellee.
AYRES, Judge.
This is an action of expropriation wherein a certain-described portion of a lot and *379 the improvements situated thereon in the Village of Baskin, Franklin Parish, Louisiana, were expropriated for the widening and otherwise improvement of a highway constituting a part of the State highway system.
The questions for resolution presented to this court upon a devolutive appeal taken by plaintiff relate to the market value of the property taken. More specifically, the issue concerns an evaluation of the improvements as determined upon a reproduction or replacement cost less an allowance for depreciation.
Plaintiff particularly complains that the trial court, after allowing depreciation of 26½% of the replacement cost for physical depreciation did not allow a further depreciation of 26% due to an alleged obsolescent depreciation or economic factor.
The record discloses no comparable sales of property in the vicinity of subject property other than as will be hereinafter pointed out. In such an event, ascertainment of the market value of property taken for public purposes must be determined from other factors and circumstances. One of such factors is the reproduction or replacement cost approach, with an adjustment for depreciation of the improvements. Rapides Parish School Board v. Nassif, 232 La. 218, 94 So.2d 40; Texas Pac.-Missouri Pac. Terminal R. v. Rouprich, 166 La. 344, 117 So. 273; State v. Crockett, La.App.2d Cir., 1961, 131 So.2d 129.
Situated upon defendant's lot, only a portion of which was expropriated but which was included in the expropriation, was a brick building of a dimension of 28.8 × 45 feet, comprising an area of 1296 square feet. (The portion of the lot expropriated had a dimension of 27.69 × 30 feet.) The purpose of the building as originally constructed was for use as a branch bank. It was of a solid 3-brick wall construction, enameled brick front, concrete floor, metal ceilings, and plastered walls. About three years preceding the trial, the roof had been replaced with a Johns-Manville asbestos roof. The excellent qualities of the materials used in the construction and the almost perfect condition of the building were unquestionably established on its demolition in clearing the right of way for the highway project. The usual and expected wear and depreciation were, however, noted in the plaster, floors, and windows.
Defendant had owned and occupied this building for many years. He used the building as an office in connection with his practice of medicine and in connection with his farming operations.
On behalf of the Department of Highways, the property was appraised by Moses R. Carter and Alex C. Duchesne, right-of-way agents for the Department. These witnesses fixed the value of the building expropriated at $4,600.00, predicated upon the replacement cost approach less depreciation. As a basis for their conclusion, a bid or estimate was obtained from one T. J. Owen, a building contractor of Winnsboro, Louisiana, from which it was contended that defendant's building could be replaced for $9,240.00. From this amount, $870.00 was deducted as "curable" depreciation, an amount estimated necessary to repair the building. From the remainder of $8,370.00, these appraisers would deduct 26½%, or $2,218.00, for physical deterioration or "incurable" depreciation, leaving a balance of $6,152.00, from which amount they would further deduct 26%, or $1,599.52, for economic or obsolescent depreciation, leaving a final balance of $4,552.48 or, in rounding out the calculation, $4,600.00 as the amount determined to be the fair market value of defendant's building.
The trial court, due to the age of the building and the explanation made by Carter, accepted and approved the allowance for the physical deterioration or depreciation of the building. No point is made as to the percentage of depreciation allowed. However, the court refused to allow depreciation based upon obsolescence or economic depreciation because he was unable *380 to find any satisfactory explanation or reason in the record for its allowance. Even if such depreciation should be allowable, we agree, the evidence does not support it.
The property was appraised on behalf of the defendant by C. R. Adams and T. E. Williamson. Adams is an experienced building contractor. His experience over a period of 30 years included the construction of school buildings, stores, offices, and compresses ranging in price from $30,000.00 to $100,000.00 each. Adams estimated the cost of constructing a comparable building at $14,300.00. The needed repairs on the building, such as a new ceiling, repairs to the plaster and woodwork, he estimated at $700.00.
Williamson, engaged in the real estate business for 15 years, estimated, from his own experience in constructing buildings for himself, that the replacement cost of defendant's building would be as testified by Adams.
Some explanation for the difference in estimates of the replacement costs of defendant's building may be in the fact that the estimate made by Owen contemplated the construction of a building not of solid brick construction and plastered walls but of a brick veneer with sheet-rock walls and ceilings, with ceilings only eight feet high instead of approximately 14 feet high as in the original building, and with a 10-year built-up composition roof instead of an asbestos-type roof. The building proposed as a replacement was, therefore, definitely of an inferior type and not comparable to the original building except as to size.
The trial court accepted Adams' and Williamson's estimate of the replacement cost of defendant's building, with an allowance of $700.00 for the necessary repairs.
Neither Adams nor Williamson testified as to the physical depreciation of defendant's building nor as to the percentage of depreciation for which allowance should be made in arriving at its market value. For their failure to so testify, plaintiff's counsel objected. This objection, we find without merit in that the court accepted and allowed the percentage of depreciation on an inferior construction, where depreciation would be expected at a more rapid rate, as testified by plaintiff's appraiser, of 26½%. Plaintiff is, therefore, without any reasonable basis to complain.
Thus, from the reproduction or replacement cost of $14,300.00, the court deducted $700.00 for needed repairs, leaving a balance of $13,600.00, from which it deducted 26½% thereof, or $3,604.00, for the physical deterioration or depreciation of the improvements, which left a balance of $9,996.00 as the value of the improvements, which, together with $50.00 as the value of the portion of the lot expropriated, aggregated the sum of $10,046.00. The court gave judgment in the amount of the latter sum, subject to the original deposit made by plaintiff.
We may further point out that the sales mentioned heretofore as possible "comparables" consist of the purchase by the Department of Highways of a portion of two certain lots and the improvements thereon near defendant's property in the Village of Baskin, acquired in contemplation of the highway construction herein concerned. The first of these was located some 300 feet from defendant's property and was of a much cheaper type of construction, having metal walls, ceilings, and roof. The price paid was $7,250.00. The second involved a portion of a lot in the same vicinity, the improvements thereon consisting of a frame construction and a tin roof, for which plaintiff paid $5,300.00.
Plaintiff objected to the proof of these sales inasmuch as they were not sales consummated by a willing seller and a willing purchaser, and, therefore, were without value as "comparables" in a determination of the value of defendant's property. Ordinarily, the objection would probably have merit.
*381 Frankly, it would appear that the trial court has not, nor have we here, given serious consideration to that phase of the evidence, as, from the class of the properties, they could scarcely be called "comparables." However, from the sellers' standpoint, the sales may not have been free and unfettered, but under the compulsion of threatened expropriation. This cannot be said of the purchaser which, as the expropriating authority, was under no compulsion in entering into the agreements. Therefore, it has no just nor reasonable basis for its complaint or objection.
After carefully considering all the evidence tendered on behalf of all parties, we find not only no error in the conclusions reached by the trial court but, from our own review of the record, we likewise conclude that the judgment was supported by the proof contained in the record.
The judgment appealed is, therefore, affirmed at plaintiff-appellant's cost.
Affirmed.