CULPEPPER, Judge.
This is a suit by plaintiffs as landowners, against Gravity Drainage District #5 of Calcasieu Parish, for compensation and damages resulting from the widening of a drainage canal and the installation of a large underground drainage pipe. The trial judge awarded plaintiff the total sum of $560, of which $350 is specified as damages to the lot across which the underground drainage pipe was constructed and $210 is specified as compensation for that portion of another lot taken by the widening of the canal. The defendant appealed. Plaintiffs answered the appeal asking an increase in the award to the sum of $1,150.
Plaintiff, Louis Ovey Gilbert, is the record owner of a triangular lot containing about one acre and measuring approximately 440 feet along the north side of the large drainage ditch, with a depth of about 334 feet on the west and coming to a point on the east. He also owns a smaller triangular lot measuring approximately 305 feet along the south side of the canal and with a depth of about 50 feet on the west and coming to a point on the east. The two lots are approximately opposite each other. These properties are adjacent to a residential area of the city of Sulphur, Louisiana.
The first alleged item of damages concerns the lot lying north of the drainage canal. In 1960 plaintiffs granted defendant an easement, 12 feet in width, along the west boundary line of this property for the construction of an underground drainage pipe. Through error, defendant actually installed the pipe so that its south end is a distance of 12.5 feet and its north end 33.5 feet from plaintiffs’ western boundary. It is the contention of the plaintiffs that this error on the part of the defendant has caused a diminution in value of said lot in the sum of $700, this being the alleged difference in the value of the lot if the drainage pipe had been placed on the 12-foot right of way granted and the value of the lot after the pipe was placed in the wrong location. In support of this contention, plaintiffs’ expert witness, Mr. Dolan, a real estate agent in the city of Sulphur for 5 years, testified that before the drainage pipe was erroneously constructed, the lot north of the canal had a value of $3,700 for residential purposes. This witness also stated that since no prospective purchaser would want to construct a building over the drainage pipe, and the widest and best portion of this triangular tract of land is on the west side, the misplacement of the pipe has restricted the use of the property for residential building purposes and has thereby caused a diminution in value in the sum of $700, so that the property is now worth only $3,000.
At the trial Mr. Dolan admitted quite frankly that he did not have the figures to show exactly how he arrived at this conclusion. We think that an examination of the record as a whole will show that there is no reasonable basis for his appraisal.
 The rule that consideration must he given to the opinions of all the experts, applies only where the opinions are well reasoned. See State v. Barber, 238 La. 587, 115 So.2d 864 and the cases cited therein. In the present case the only reason given by Mr. Dolan to substantiate this appraisal was that a vacant lot in the abutting Pecan Acres Subdivision sold for $2,750 in 1961 and that recently two homes *577 in the same subdivision sold for $17,900, and $15,000, respectively. Mr. Dolan said he was also familiar with the value of the adjoining Jacobson property, but he cited no sales and did not give its value.
These sales relied on by Mr. Dolan are not comparable to the lot here at issue. The cited sales were of lots in developed subdivisions on dedicated streets. The plaintiff's lot is not in any subdivision, has no frontage on any street, and is completely inaccessible. It is bound on the south by the 57 foot canal and on the west and northeast by the rear lines of adjacent residential subdivisions. A prospective purchaser for residential purposes would either have to construct a very expensive bridge across the 57-foot canal or buy one of the abutting lots, or an easement thereon, in order to gain access. Even after such expensive access was acquired, the plaintiff’s lot would not be very desirable for a residence because it would have to face the rear of other houses, or this large, unsightly and dangerous canal.
We think the testimony of Mr. Coleman, expert witness for the defendant, who has been in the real estate business in the Lake Charles area for 30 years, is much more reasonable and logical. Mr. Coleman pointed out, as stated above, that the property is inaccessible and the cost of obtaining access would be great. It was Mr. Coleman’s opinion that the best present use of the property was for a play area or pasture. The property at the present time is actually being used as a pasture for a horse. Residential lots in developed subdivisions in the area have a value of from $2,500 to $3,000 but these residential lots certainly cannot be considered comparable to the inaccessible lot in question. We think that Mr. Coleman’s estimate that the entire lot has a present value of $900 and that no damage was caused by the misplacement of the drainage pipeline in question is logical and reasonable. Actually, as defendant has pointed out, the misplacement of the line was not very great, it averaging only about 13i/> feet farther east than it should have been. If some prospective purchaser wanted to construct a building, there would still be plenty of room without the necessity of erection of a structure over the drainage pipe.
In awarding the sum of $350 as damages to the lot north of the canal, the trial judge apparently took the average of the sum of $700 estimated by plaintiff’s witness, Mr. Dolan, and the sum of zero dollars estimated by the defendant’s witness, Mr. Coleman. Although in a proper case, where the testimony of the expert appraisers is about equally sound and logical, it might be correct to average the appraisals, we do not think that in a case of this kind where the appraisals are far apart and one is not well reasoned, it is proper to average the two. See Greater Baton Rouge Consolidated Sewer District v. Nelson, 144 So.2d 186 (1st Cir.App.1962).
However, we think plaintiffs are entitled to some compensation by reason of defendant’s laying the drainage pipe in a location where it had no easement. Under the evidence, we think the most appropriate way to calculate this compensation is on the basis of a 12-foot-wide strip, for the length of the pipeline. Such a strip would contain approximately Jioth of an acre, which, at $900 per acre, would have a fee value of $90. The use of this Viotb. of an acre for a drainage pipe is worth, under the facts of this case, about 50% of the fee value, or the sum of $45.
The second item of damages claimed by plaintiffs concerns the smaller triangular lot located south of the drainage canal. This property fronted about 50 feet on the extension of a street and ran back along the canal about 305 feet to a point. It is the contention of the plaintiffs that in widening the said canal from 38 feet to approximately 57 feet, the defendant took 10 feet off the north side of this lot. On the other hand, defendant’s contention is that the drainage canal was not widened beyond *578 the boundary of the existing easement for said canal, except for a very small strip of land containing only 10.4 square feet. Defendant contends that the burden of proof was on plaintiffs to show that they owned the 10-foot strip free of any easement for the canal and that plaintiffs have failed to meet this burden.
The record shows that at the outset of the trial plaintiffs introduced in evidence a copy of a plat of Pecan Acres Subdivision and a copy of a plat of Carlin & Stine Subdivision. Plaintiffs lot is not in either of these subdivisions but the plats do show plaintiff’s lot, as well as the right of way for the drainage canal. During the presentation of plaintiffs’ case, they stated that the triangular lot which they owned south of the canal was as shown on these plats.
Defendant then introduced the testimony of a civil engineer and surveyor who stated that, using the two subdivision plats filed in evidence by the plaintiffs, he had determined the boundary line of the easement for the drainage canal, as well as the boundary lines of the triangular lot owned by plaintiffs south of the canal. This surveyor testified that, according to these plats, the widening of the canal did not encroach on plaintiff’s lot, except for a very small sliver of land containing 10.4 square feet.
In rebuttal, the plaintiff, Mr. Louis Ovey Gilbert, testified that the triangular lot south of the canal was part of an 81 acre tract of land purchased by him 25 years ago, under a deed which described the northern boundary of the property as being in the center of the canal, which at that time was only about 12 feet wide. Mr. Gilbert also testified that he had never dedicated or granted an easement for the canal. This rebuttal testimony by Mr. Gilbert was allowed in evidence without any objection whatever by counsel for the defendant.
Under this evidence, we do not think that plaintiff has proved by its surveyor, or the subdivision plats filed, that the plaintiff has ever dedicated the drainage canal easement shown thereon. These plats were recorded by unknown owners and are not shown to have been signed or approved by plaintiffs or their ancestors in title, nor is there any proof of the acquisition of a servitude by prescription.
On the other hand, Mr. Louis Ovey Gilbert was allowed to testify in rebuttal, without objection, that the boundary line of this lot originally went to the center of the canal, which was then about 12 feet wide, and that he had never granted any easement for the canal or its widening. It may be true that defendant could have objected, under the best evidence rule, and could have required that plaintiff’s deed be produced, but no such objection was made. Since this secondary evidence, i. e., the testimony of Mr. Gilbert, was received without objection it becomes competent proof. See 20 Am.Jur. 1036, Verbo Evidence, Section 1185.
It is therefore our conclusion that plaintiffs have proved the widening of the canal encroached on their lot by a distance of about 10 feet, reducing the frontage from 50 feet to about 40 feet and taking a total of approximately 2100 square feet. We think the evidence amply supports the trial court’s conclusion that this property was shown to be worth about 100 a square foot which means that plaintiff is entitled to an award of $210. We find no merit in plaintiffs contention, made in their answer to the appeal, that this lot was worth $800 before the taking and has now become totally useless by reason of its diminution in size.
Counsel for defendant calls to our attention the fact that the plaintiff, Louis Ovey Gilbert, is the sole record owner of the subject properties and judgment herein should be in his favor alone. This appears to be correct.
For the reasons assigned, the judgment appealed is amended by reducing the award for damages to the lot north of the canal from $350, to $45, making the total award $255. The judgment is further amended to be in favor of Louis Ovey Gilbert alone. *579 Otherwise than as herein amended, the said judgment is affirmed. All costs of this appeal are assessed against the defendant appellant.
Amended and affirmed.