SAVOY, Judge.
The plaintiff Highway Department expropriated the residence belonging to defendant. After a lengthy trial, the district court awarded defendant the sum of $77,700.00 for said property. This sum included the value of the land, improvements thereon, and a servitude which defendant owned on an adjoining parcel of land. Plaintiff had originally deposited $58,000.-00, being the value of said property as determined by its appraisers. Following the judgment of the trial court, plaintiff deposited the additional sum of $19,700.00 plus interest in compliance with the judgment of the lower court.
Plaintiff had originally employed Mr. William B. Coleman and Mr. Leonard A. Pauley to value the subject property. Plaintiff decided not to use these appraisers although they had used them in many prior cases in this vicinity. Plaintiff then secured the services of Mr. Forrest K. White, an appraiser living in Calcasieu Parish, Louisiana, and Mr. Edgar A. Tharpe, a real estate expert living in New Orleans, Louisiana. These two experts placed a value of $58,000.00 on the subject property, which was the sum originally placed in the Registry of the court.
The property taken by plaintiff was located in a very desirable residential neighborhood within the City Limits of Lake Charles, Louisiana. It had all available utilities except that defendant installed a water well. The land expropriated contained 53,484 square feet. Said lot had a *452 frontage of 180 feet on Lake Street (paved and a main artery of traffic travelling south and north through Lake Charles, Louisiana) by a depth of 295 feet. The back portion of the land adjoined a coulee. Defendant also owned a servitude of passage 20 feet in width by 160 feet in depth, extending from the rear of defendant’s lot to the north across adjoining property to another street which is known as Prien Lake Road. Located on the property was a large ranch-type one story home of brick and frame construction, together with certain outer buildings and a swimming pool. Mr. Harry Shutts, a highly regarded civil engineer of Lake Charles, Louisiana, made a survey of the residence and brick patio. He found the residence to contain 5,377 square feet, and the patio to contain 507 square feet. The record reveals that the land expropriated contained many trees, shrubbery, and a well-kept lawn.
Since this was a total taking of the family home of defendant, the only matter to be determined by this Court is the amount defendant should receive for his property.
Defendant appealed from the judgment of the district court asking for an increase in the award made by the district court. Plaintiff answered the appeal asking that the award of the trial court be reduced.
In arriving at the value of the property taken, the Court will have to determine the value of the land separately from the value of the improvements for the reason that while the majority of the experts found comparable sales for the land, they were unable to find a comparable for the improvements.
In the absence of comparable sales as to improvements, the experts may use an alternative method, namely, the reproduction cost of the improvements, less depreciation, plus the value of the land itself, the latter being the market data approach. State through Department of Highways v. O’Neal, (La.App., 3 Cir., 1963), 150 So.2d 608; State through Department of Highways v. Jenkins, (La.App., 3 Cir., 1963), 150 So.2d 611; State Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864; State v. Sauls, 234 La. 241, 99 So.2d 97; Rapides Parish School Board v. Nassif, 232 La. 218, 94 So. 2d 40.
Defendant took the depositions of Messrs. Coleman and Pauley prior to the trial of the case. These experts used the square foot method to determine the value of the land taken in the instant case. Mr. Coleman found the land to have a value of $24,000.00. Mr. Pauley found the land to be worth $23,650.00. Neither of these experts placed any value on the swimming pool. The district judge held that the swimming pool was an immovable by destination. The experts for defendant found the swimming pool to have a value of $1,-500.00.
Messrs. White and Tharpe used the market data approach for both the land and the improvements. An examination of the evidence given by these two gentlemen shows that the market data or comparable sales approach used by them to place a value on the property taken as a unit is not the proper approach in the instant case for the reason that many of the transactions involved properties several miles distant and in an entirely different locality. Some of the properties used as comparables were outside of the City Limits without sewerage, fire protection and other utilities commonly found within the City Limits of Lake Charles, Louisiana. See State through Department of Highways v. Ebrecht, (La.App., 1 Cir., 1961), 135 So.2d 624. They did use one transaction in the vicinity of the subject property, but this property was sold at a distressed price because of the financial condition of the vendor.
Mr. Mose Ableman made an excellent witness and devoted considerable time to his appraisal. Mr. Ableman was of the opinion that the land expropriated had a value of *453 $27,500.00. He used many comparables to arrive at this figure.
Mr. Stanford L. Vincent also testified for defendant. He fixed the value of the property taken at 60^ per square foot or the sum of $31,860.00.
After considering all of the evidence as to the value of the land, this Court is of the opinion that the value of said property expropriated is the sum of $27,750.00. This is not much higher than the value placed thereon by the experts for plaintiff when we consider that they made no allowance for the swimming pool which had an admitted value of $1,500.00 at the time of the taking and which the trial judge found to be an immovable by destination.
The next item for consideration is the replacement cost of the residence together with the outbuildings, after deducting from said replacement cost the depreciation on said structures.
Messrs. Coleman and Pauley base their estimates as to the replacement costs of the improvements upon information which they had received from a Mr. Bartley, a general contractor, who had been hired by the plaintiff for the purpose of gathering that information. Mr. Bartley was not called as a witness, and we are unable to evaluate his estimate of the replacement costs from the information contained in the record.
On the other hand, there is a detailed and thorough analysis of the reproduction costs made by Mr. J. G. Lutgring and Mr. Mose Ableman.
Mr. Lutgring testified extensively as to the cost of reproducing the improvements. He had done considerable work on the premises for defendant, and the Court is of the opinion that he was in a better position to show the replacement costs of the improvements than the other witnesses, which included the real estate experts mentioned heretofore in this opinion. Mr. Lutgring obtained prices from various material people prior to making his appraisal. Mr. Lutgring was of the opinion that the replacement cost on the improvements in the instant case would be $86,700.00. We have rounded this figure. The actual amount was $86,710.00. He depreciated the improvements by 15%.
Mr. Mose Ableman, a realtor, gave considerable time in arriving at the reproduction costs in connection with the improvements in the instant case. He arrived at the same reproduction cost as Mr. Lutgring except that he depreciated the improvements by 26%, whereas Mr. Lutgring used a figure of 15% for depreciation. This Court is of the opinion that because of the many sales handled by Mr. Ableman in and around Lake Charles, Louisiana, he is in a better position to show the depreciated value of the instant property. He found a net replacement cost of $61,300.00. Mr. Ableman rounded out the value of the land and the improvements to the sum of $89,-000.00.
Considering the evidence as a whole, this Court is of the opinion that the property expropriated is valued at $89,-000.00.
For the reasons assigned, the judgment of the district court is amended by increasing the award made by the court from the sum of $77,700.00 to the sum of $89,000.00. Since defendant has received $77,700.00, he is entitled to receive from plaintiff the additional sum of $11,300.00, with interest at the rate of 5% per annum from March 15, 1963, until paid.
The expert fees have been paid by plaintiff. There is a letter in the record stating this to the Clerk of Court and showing the amount each expert is to receive. Counsel for defendant, in answer to a query by a member of the Court, stated that all of the expert fees had been paid. The reason for mentioning this fact is because the trial judge, in his opinion, did not fix the expert fees, but reserved the right of defendant to fix said fees by filing a rule on plaintiff.
Plaintiff to pay all costs of this appeal.
Amended and affirmed.